IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK INGRAM                                    Case No. 6:12-cv-01215-AA
                                               OPINION AND ORDER
            Plaintiff,

      v.

AAA FIRE & CASUALTY INSURANCE,
COMPANY,

            Defendant.
_____

R. Scott Taylor
Clinton L. Tapper
Taylor & Tapper
400 E. 2nd, Suite 103
Eugene, Oregon 97401
      Attorneys for plaintiffs

Sean D. Lanz
Westin T. McLean
Barger Law Group, P.C.
4949 Meadows Road, Suite 620
Lake Oswego, Oregon 97035
      Attorneys for defendant

AIKEN, Chief Judge:

      Defendant AAA Fire and Casualty Insurance Company ("AAA")

moves for partial summary judgment pursuant to Fed. R. Civ. P. 56.

Plaintiff Mark Ingram filed a cross-motion for partial summary

Page 1 - OPINION AND ORDER

judgment. For the reasons set forth below, defendant's motion is granted and plaintiff's motion is denied.

## BACKGROUND

Plaintiff brings this action to recover under a Homeowner's Policy ("Policy"), issued by defendant, for the theft of three Rolex watches and a briefcase.

Plaintiff purchased the Policy from defendant in January 2010, and the Policy was renewed in 2011 and 2012. In addition to the basic coverage of the Policy, plaintiff purchased additional coverage for specific items, adding $268.00 to the Policy's premium. Doc. 10-2 at 3. These specific items are listed, or "scheduled," on the Policy's Scheduled Personal Property Endorsement ("SPPE"). The Policy's SPPE lists one of the watches at issue here, plaintiff's Oyster Rolex ("Oyster"), and its corresponding insured amount of $18,500.00.[1] Id. at 7.

Plaintiff decided to have his Oyster and two other Rolex watches appraised, and on April 5, 2012, plaintiff had all three watches in a briefcase in his car while he was out running errands. At some point prior to arriving at a local jewelry store for the appraisal, plaintiff claims the briefcase containing the watches was stolen from the rear hatch of his unlocked SUV. Included in the theft were: 1) the Oyster, insured for $18,500.00; 2) a Rolex Daytona watch ("Daytona"), with an asserted actual cash value ("ACV") of $125,000.00; 3) a Rolex Explorer II watch ("Explorer"),

---

[1] Also listed on the SPPE is a ladies diamond ring, which is not relevant to this case. Id. at 7.

Page 2 - OPINION AND ORDER

with an asserted ACV of $15,000.00; and 4) the briefcase, with an asserted ACV of $1,000.00.

The parties agree that plaintiff has performed his part under the Policy, and that the Policy insures against the theft of all three watches. The parties further agree on the insured amount of the scheduled Oyster, $18,500.00, which defendant has paid. In dispute is the amount of coverage for the two remaining, unscheduled watches.[2] Defendant asserts the Policy limits liability for the two unscheduled watches at $1,500.00, while plaintiff argues the Policy covers the loss of the Explorer and the Daytona at their asserted ACV. Therefore, plaintiff asserts that defendant has breached the Policy by wrongfully refusing his demand to pay the ACV for the two unscheduled watches. Plaintiff filed this action to obtain damages of $139,500.00, in addition to prejudgment interest and fees.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Motions for partial summary judgment are evaluated using the same standard. Id. The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is

---

[2]As neither party's brief addresses the settled value of the stolen briefcase, this Court will not address it either.

Page 3 - OPINION AND ORDER

such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. <u>Id</u>. at 324. Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>T.W. Electrical</u>, 809 F.2d at 630.

A cross-motion for summary judgment requires the court to apply the same standard and rule on each motion independently. <u>Creech v. N.D.T. Indust., Inc.</u>, 815 F.Supp. 165, 166-67 (D.S.C. 1993). "The granting of one motion does not necessarily warrant the denial of the other motion, unless the parties base their motions on the same legal theories and same set of material facts." <u>Stewart v. Dollar Fed. Sav. and Loan Ass'n</u>, 523 F. Supp. 218, 220 (S.D. Ohio 1981) (citing <u>Schlytter v. Baker</u>, 580 F.2d 848, 849 (5th Cir. 1978)).

### DISCUSSION

Defendant maintains that it has paid plaintiff full benefits for the theft of his watches as covered under the Policy. Moreover,

Page 4 - OPINION AND ORDER

defendant asserts that plaintiff fails to present a plausible interpretation of the Policy in support of his argument that he is entitled to more than $1,500.00 for the loss of the two unscheduled watches. Plaintiff contends that a plain reading of the Policy establishes coverage for the two unscheduled Rolexes at their ACV and that ambiguity between two separate loss settlement provisions should be resolved in his favor.

Relevant to the dispute are the three sections of plaintiff's Policy which determine the amount of coverage for jewelry: 1) the special limits of liability; 2) the Replacement Cost Loss Settlement provision ("RCLS"); and 3) the SPPE Loss Settlement provision.

First, the Policy contains special limits of liability for "Coverage C" personal property, which state in pertinent part:

> The special limit for each category shown below is the total limit for each loss for all property in that category.   These special limits do not increase the Coverage C limit of liability.
>
> . . .
>
> e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

Doc. 10-2 at 22.

Second, the RCLS states that "[c]overed losses" to Coverage C property "are settled at replacement cost at the time of the loss." Id. at 15. The RCLS explains that "[t]his method of loss settlement" applies to "articles or classes" of property, including jewelry, "if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement."

Page 5 - OPINION AND ORDER

Id. However, the RCLS "will not apply to other classes of property separately described and specifically insured." Id. "Replacement Cost Loss Settlement" is specifically defined as follows:

> The following loss settlement condition applies to all property described in A. above:
>
>> 1. We will pay no more than the least of the following amounts:
>>
>>> a. Replacement cost at the time of loss without deduction for depreciation;
>>>
>>> b. The full cost of repair at the time of loss;
>>>
>>> c. The limit of liability that applies to Coverage C, if applicable;
>>>
>>> d. Any applicable special limits of liability stated in this policy; or
>>>
>>> e. For loss to any item described in A.2.a.-f. above, the limit of liability that applies to the item.

Id. (emphasis added). Jewelry is described in section A.2.a of the RCLS.

Finally, the Policy's SPPE provides coverage for "classes" of personal property, including "[j]ewelry, as scheduled above." Id. at 10. Specifically, the SPPE covers "the classes of personal property which are indicated in the Schedule above" at the least of the following amounts:

> (a) The actual cash value of the property at the time of loss or damage;
>
> (b) The amount for which the property could reasonably be expected to be repaired to its condition immediately prior to loss;
>
> (c) The amount for which the article could reasonably be expected to be replaced with one

Page 6 - OPINION AND ORDER

> substantially identical to the article lost or
> damaged; or
>
> (d) The amount of insurance.
>
> 2) The actual cash value condition in paragraph (1)(a)
> above does not apply if, at the time of loss, Coverage C
> - Personal Property covered in the policy to which this
> endorsement is attached is subject to replacement cost
> loss settlement.

Id. at 10 (emphasis added).

The first rule of interpretation of an insurance contract is to determine the parties' intent, which is accomplished by looking at the terms and conditions of the policy itself. See, e.g., Hoffman Const. Co. v. Fred S. James & Co., 313 Or. 464, 469, 836 P.2d 703 (1992); North Pac. Ins. Co. v. Hamilton, 332 Or. 20, 24, 22 P.3d 739 (2001) ("Intent is determined by looking to the terms and conditions of the policy."); see also Or. Rev. Stat. § 742.016 ("[E]very contract of insurance shall be construed according to the terms and conditions of the policy.").

When a term is not specifically defined in the policy, the court first identifies the plain meaning of the term. Dewsnup v. Farmers Ins. Co., 349 Or. 33, 40, 239 P.3d 493 (2010). If the term lacks a plain meaning, the term is next examined within the broader context of the policy. Id. Moreover, the policy's terms are interpreted from the "understanding of the ordinary purchaser of insurance." Totten v. New York Life Ins. Co., 298 Or. 765, 771, 696 P.2d 1082, (1985). Only when two or more plausible interpretations remain after considering a term's plain meaning within the Policy's broader context will courts resort to the rule of construction against the drafter of the policy. Hoffman, 313 Or. at 470.

Page 7 - OPINION AND ORDER

A plain reading of the Policy supports defendant's argument that the loss of the two unscheduled watches is limited to $1,500.00. The Policy makes clear under the special limits of liability that coverage for the loss of "watches" is limited to $1,500.00. Doc. 10-2 at 22.

In addition, the RCLS endorsement of the Policy states that the replacement cost method of loss settlement will apply to personal property, as well as other "articles or classes of property if they are separately described and specifically insured." Doc. 10-2 at 15. However, coverage is limited to the least of: 1) replacement cost without deduction for depreciation; 2) cost to repair; 3) limit of liability that applies to Coverage C; 4) any special limits of liability; or 5) limit of liability that applies to the item.[3] Id.

Thus, the RCLS clearly states that losses will be settled at the least of the five methods set out for determining coverage, i.e., the special limit of liability in this case. Although plaintiff claims the ACV of his two unscheduled Rolexes is much higher, the RCLS clearly limits coverage for jewelry and watches at $1,500.00, the special limit of liability from the body of the Policy, as the least of the five methods available.

[3]Replacement cost insurance developed as a way to insure against loss through depreciation; it provided an additional amount of security against a very real risk of loss when property, real or personal, had depreciated to the point where its ACV was less than the amount necessary to replace it. See Higgins v. Insurance Co. of North Am., 256 Or. 151, 162-163 (explaining replacement cost insurance, generally). Similar to the SPPE, plaintiff pays a higher premium in order to have RCLS. Doc. 10-2 at 3.

Page 8 - OPINION AND ORDER

Finally, defendant maintains that no terms in the SPPE provide coverage for items that are not included on the schedule, and I agree. The relevant portion of the SPPE clearly states that it applies to items "indicated in the Schedule above." Id. at 8. Only one of plaintiff's three stolen Rolexes is included on the SPPE. Plaintiff concedes that the Daytona and the Explorer were not scheduled on the SPPE, but asserts that "jewelry as a class is covered by the endorsements." Pl.'s Mem. in Supp. of Mot. Summ. J. at 7.

In his argument that the plain language of the SPPE covers the "class of jewelry" under the endorsement, plaintiff misapprehends the relevant section of the provision. The SPPE's Loss Settlement provision clearly dictates the specific amount of coverage for property that is scheduled specifically on the endorsement; the SPPE plainly covers only items of jewelry "which are indicated in the Schedule above." Doc. 10-2 at 8. Unscheduled property is covered according to the Policy's limits of liability, which in this case limit defendant's liability for all other items of jewelry and watches to $1,500.00 per loss. Id. at 22.

In sum, the special limits of liability and the RCLS are clear and unambiguous and apply to the watches. Likewise, the SPPE, which provides increased coverage for specifically scheduled items, is also clear and unambiguous and does not provide coverage for the two watches. Accordingly, this Court finds that a plain reading of the terms and conditions of the Policy from the perspective of an ordinary purchaser of insurance limits defendant's liability on the

Page 9 - OPINION AND ORDER

loss of the two unscheduled watches to $1,500.00.

Plaintiff nonetheless argues that the Policy's terms are ambiguous because the two loss settlement provisions – the SPPE and the RCLS – together create ambiguity as to "as to whether items must be scheduled to be covered under the policy." Pl.'s Mem. in Supp. at 4. Therefore, plaintiff argues, the Policy should be read in favor of the insured to extend coverage under the SPPE to the two unscheduled Rolexes at their ACV.[4] Defendant counters that plaintiff fails to present a plausible interpretation of the Policy in support of plaintiff's argument that he is entitled to more than $1,500.00 for the loss of the two unscheduled watches. Moreover, even if the provisions were ambiguous, there is no way of construing the provisions in plaintiff's favor which would result in additional coverage given the special limits of liability.

In his argument, plaintiff focuses on an interpretation of the word "classes" as it is used throughout the Policy and endorsements. Plaintiff offers a definition of "class" as "a group, set, or kind sharing common attributes." Id. at 6. Plaintiff argues that the Policy is incomprehensible because it distinguishes between "specifically identified class items and class items generally." Id. Plaintiff maintains that as a result, the ordinary purchaser of insurance would have no way of knowing which items of

_____

[4]Plaintiff also suggests that this Court should turn to extrinsic evidence of the intent of the parties after a review of the ambiguous provisions. Under Oregon law, however, "the interpretation of insurance policies is a question of law, not one that is resolved by reference to evidence extrinsic to the policy itself." Andres v. Am. Standard Ins. Co. Of Wis., 205 Or. App. 419, 424, 134 P.3d 1061 (2006).

jewelry were insured or for how much.

However, this Court fails to see how identifying a specific item of jewelry for the purpose of increasing its insured amount under the SPPE negates classifying jewelry under the Policy's special limits of liability. Based on the plain language of the special limits of liability, a reasonable purchaser of insurance would read the Policy to cover a loss from the class of jewelry at $1,500.00 per loss. However, this provision does not preclude additional insurance for a specific item from that class, such as that provided in the SPPE.

Further, the SPPE clearly states that its loss settlement provision applies only to those class items which are included on the schedule. Absent this specific identification, items of jewelry are settled like all other items in its class, per the special limits of liability. This Court fails to see how this specific identification renders the Policy ambiguous.

Similarly, plaintiff argues that the presence of the Newly Acquired Property ("NAP") clause in the SPPE further illustrates the inconsistency within the Policy. The NAP clause provides coverage for "newly acquired property of a class of property already insured" and sets certain limits of liability. Doc. 10-2 at 8. Further, the NAP clause requires the policyholder to both report the newly acquired objects within 30 days and pay a higher premium from the date the items were acquired. Id.

Plaintiff suggests that if the NAP provision requires all jewelry to be specifically identified to be a part of the class

Page 11 - OPINION AND ORDER

already insured, the NAP clause "makes no sense."[5] Pl.'s Mem. in Supp. at 5-6. However, the NAP clause is contained within the SPPE, and the SPPE applies only to those items included on its schedule. Doc. 10-2 at 8. In other words, the Policy offers additional coverage for new, specifically identified items, as long as an item from that same class is scheduled on the SPPE. This Court finds nothing inconsistent with offering additional coverage for new items of a class of items already insured.

Finally, plaintiff contends that the SPPE and RCLS settlement provisions are inconsistent and therefore ambiguous. I find neither to be the case. Applying these provisions to determine the amount of coverage for the items at issue yields consistent results, limiting liability to the insured amount of $18,500.00 for the Oyster under the SPPE and for the remaining two watches under the Policy's special limits of liability. The mere fact that one provision provides additional coverage to specifically scheduled items while the other limits coverage for unscheduled items of the same class does not necessarily amount to ambiguity. See e.g., Schutt v. Farmers Ins. Group of Companies, 129 Or. App. 401, 405, 879 P.2d 1303 (1994). Even if the term "class" was ambiguous, there is no way this Court could construe the terms of the Policy in favor of the insured which would result in additional coverage, because the Policy limits coverage for any jewelry and watches to

---

[5] Plaintiff's brief actually states that defendant suggests that all jewelry must be specifically described to be part of the class. As this Court failed to find this characterization submitted by defendant, it will attribute this argument to plaintiff. Pl.'s Mem. in Supp. at 5.

$1,500.00 unless specifically scheduled on the SPPE.

Accordingly, the Policy unambiguously provides coverage for all three of plaintiff's stolen Rolexes: $18,500.00, the scheduled amount for the Oyster, and $1,500.00, the limit of liability for the loss of the two unscheduled watches.

## CONCLUSION

For the reasons outlined above, defendant's motion for partial summary judgment (Doc. 8) is GRANTED. Plaintiff's motion for partial summary judgment (Doc. 14) is DENIED.

IT IS SO ORDERED,

Dated this 26th day of April, 2013.

Ann Aiken
United States District Judge